## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEFFERY D. NELSON**                    **CIVIL ACTION**

**VERSUS**                              **NO. 18-11388**

**DARREL VANNOY, WARDEN**                **SECTION "A"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.    PREFACE

As an initial matter, although the memorandum in support of petitioner Jeffery D. Nelson's habeas petition includes the name of his brother and co-defendant, Quentin McClure, this habeas corpus proceeding relates _only_ to Nelson. My briefing order

_____

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

specifically directed the State to answer as to Nelson.  See Rec. Doc. No. 5.  When the petition and supporting documents were received, the clerk of court initiated a separate case for McClure, assigned C. A. No. 18-11389"M"(1).  The Clerk's action had the effective of bifurcating the claims of Nelson and McClure.  On March 25, 2019, McClure's separate petition was dismissed without prejudice for failure to prosecute and judgment was entered.  If this court now were to consider any claims or defenses as to McClure, he would be prejudiced by the prohibitions against successive petitions under 28 U.S.C. § 2244 and Rule 9 of the Rules Governing Section 2254 Cases.  Accord Castro v. United States, 540 U.S. 375, 383 (2003) (a pro se litigant is prejudiced by the recharacterization of a habeas pleading without due warning and opportunity to amend or withdraw).  McClure has already chosen not to prosecute the identical claims/petition in the separate case allotted for him by the clerk under a different civil action number.  I will not assume that McClure would prosecute his claims as part of this separate case and face its dismissal as a successive petition.  For these reasons, I have not addressed or considered the State's opposition or defenses related McClure.

II.    FACTUAL BACKGROUND

The petitioner, Jeffery D. Nelson, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 2, 2012, Nelson and

---

[2]Rec. Doc. Nos. 1, 4.  Record documents 1 and 4 are identical.  For some reason, the clerk of court re-docketed Nelson's petition after the filing fee was paid.

two co-defendants, Quentin McClure (Nelson's brother) and Chasity Griffin, were charged by a Jefferson Parish grand jury in an eight-count indictment in which Nelson was charged with second degree murder, possession of a weapon by a convicted felon and conspiracy to commit obstruction of justice.[3]

On February 2, 2012, Nelson entered a not guilty plea to the charges against him.[4] The Louisiana Fifth Circuit Court of Appeal summarized the facts established at trial in relevant part as follows:

The Murders

Theodore Pierce was murdered outside of a friend's house in Bridge City on January 2, 2011. Co-defendants McClure and Griffin were arrested shortly thereafter and charged with his murder. Pierce's murder was witnessed by Charles Smith, a neighbor, who gave a statement to the police and who identified McClure and Griffin as the shooters in photographic lineups two days after the murder.

[. . .]

Smith also told police during his statement that the day after the shooting, McClure drove to his house armed with a gun and confronted him stating, "I heard you talking about, about the, the shooting," to which Smith responded that he had not been talking about anything. Smith stated that he believed his life was in danger because he had witnessed the murder.

At approximately noon on August 17, 2011, the day before a scheduled motion hearing to determine the admissibility of the photographic identifications made by Smith of McClure and Griffin as the shooters in Pierce's murder, Smith was found shot to death in front of his home located on Fourth Street in Bridge City. Eight casings were found at the scene and Jene Rauch, a firearm and tool mark

---

[3]St. Rec. Vol. 1 of 12, Indictment, 2/2/12; Grand Jury Return, 2/2/12. The charges were as follows: (1) Count one charged Griffin and McClure with the second degree murder of Theodore Pierce. (2) Count two charged Nelson with the second degree murder of Charles Smith. (3) Count three charged McClure as a felon in possession of a weapon. (4) Count four charged McClure as a felon in possession of a weapon. (5) Count five charged Griffin as a felon in possession of a weapon. (6) Count six charged Nelson as a felon in possession of a weapon. (7) Count seven charged McClure with intimidating Smith in an effort to influence his testimony in a judicial proceeding. (8) Count eight charged all three co-defendants with conspiracy to commit obstruction of justice.

[4]St. Rec. Vol. 1 of 12, Minute Entry, 2/7/12.

examiner expert, opined that one gun was used in the shooting. An autopsy revealed that Smith died of multiple gunshot wounds to his head, chest and leg. The murder weapon was never recovered.

Smith's friend, John Stewart, was visiting Smith at his house on Fourth St. when Smith was shot. [. . .] When Stewart stepped outside, he saw a young black male with dreadlocks, wearing a black "wife beater," blue shorts, and a black bandana over his head, jump over the fence. Stewart was unable to see the man's face because it was partially covered; hence, Stewart was unable to identify the man from a photographic lineup. At trial, the parties stipulated that at the time of Smith's murder, Defendant was a young black man with dreadlocks.

[. . .]

Detective Matthew Vasquez of the Jefferson Parish Sheriff's Office (JPSO) investigated Smith's murder. [. . .] He found that Defendant, McClure's brother, fit the description of Smith's assailant provided by Stewart. [. . .]. Det. Vasquez subsequently subpoenaed Defendant's cell phone records which showed that he was in the area of Smith's residence at the time of his murder and left the area soon thereafter.

Defendant was arrested on unrelated outstanding attachments and questioned about Smith's murder. After being advised of his rights, Defendant gave two taped statements. In his first statement, Defendant denied knowing Smith and was unable to say what he was doing on the day of Smith's murder. Defendant also denied owning a cell phone. When confronted with his cell phone records, Defendant admitted he had lied and ultimately admitted that he used his cell phone to talk to McClure while McClure was in jail.

In his second statement, [. . .] Det. Vasquez then confronted Defendant with his cell phone records which placed him in Bridge City at the time Smith was killed. Defendant became agitated and angry and said, "f**k the cell phone records." [. . .] Det. Vasquez then played the phone conversation between McClure and Defendant that took place six hours after the shooting wherein McClure asked whether the information he heard about "Dude" was true. Defendant stated "Dude" referenced a family member, but could not say who the family member was or his relationship. Also in that phone conversation, Defendant told McClure that their mother did not want him talking to McClure because the call could be traced. When Det. Vasquez asked Defendant why he was worried about being traced if they were only talking about a relative, Defendant became very angry and told Det. Vasquez to "just book me then. I'm done. Just book me." Defendant was subsequently charged with Smith's murder.

The Conspiracy

During his investigation of Smith's murder, Det. Vasquez listened to "hundreds of hours" of jailhouse phone calls made by McClure and Griffin from the JPCC both before and after Smith's murder. [. . .]

In the January 6, 2011 phone call from McClure to an unknown male, McClure stated that he's "good" as "[l]ong as the n*gg* don't say nothing." The

next day McClure assured his mother that everything was alright "long as nobody don't say nothing." In a call to his brother, Frank, two days later, McClure indicated that the police claimed they had one witness and "n*gg* already know who the witness is."

On January 25, 2011, McClure and an unknown female facilitated a three-way call with Defendant during which McClure stated, "I ain't trippin' . . . They don't got no witness . . . Well, they got one witness, but . . . he ain't coming to court or whatever, woo di woo." Two days later, Defendant asked McClure how he got caught to which McClure responded, "I was acting stupid . . . I was acting dumb as a mother-f**ker son . . . I was on the wrong level son."

Four days later, on January 29, 2011, McClure had another three-way call with his friend, Willis Stevenson, and Defendant. During the call, Stevenson told McClure that Griffin had not been to court and that Griffin's attorney said she would be going home in 120 days because the State did not any evidence against her. McClure responded, "Right, yeah cause my lawyer was like 'uh you know they got one witness but uh your little brother is on that.' When he told me that, I already know what it was (laughing), ya heard me?" Stevenson then told McClure about a conversation Griffin's father, Terrence Daniels, had with Smith. Specifically, Stevenson said, "T went over there today, cause he was with Scooby ya know what I'm saying. So boy Scooby brought him, n*gg* was at the Fishhook. Ya know what I'm saying, he brought him to the Fishhook, I guess that where he felt comfortable at or whatever." Later at trial, Smith's girlfriend, Margie McKeel, testified about an incident where Smith had told her that Griffin's father had threatened his life, telling Smith that "he better not testify or else there's going to be gunplay."

A few months later, on June 2, 2011, Griffin called an unknown female and told her that her attorney was going to set Griffin's next court date for June 23 but that Griffin told her attorney the date was "too early." Griffin explained that they needed to get their discovery packets. She stated that Defendant "was hollering about . . . other lil dude whose name starts with a C, ya heard me. You know who I'm talking about. . . . I think it's Troy's brother, lives on Fourth Street. I ain't gonna say his name." Later on the same day, Griffin made a call to an unknown male and told him that "they only got one witness," who she identified as "Charles[,] Troy's brother." She further stated that his statement did not add up and that "he really didn't like see nothing."

Two days later on June 4, 2011, Griffin spoke to a man named Louis Wells and told him to contact Smith's girlfriend, McKeel, to see what is "happening with Dude" who is "speaking on me and Q-sie [McClure]." Wells responded that he heard McKeel was staying in Algiers and that he had not seen her "back here." Wells then handed the phone to Griffin's brother. Griffin told her brother, "I need that boy, ya heard me?"

During another conversation between Griffin and her brother on June 8, 2011, her brother stated, "heard we pulling something off" and that "Lil Jeff [Defendant]" is "all in." Griffin later told her brother to acquire a "b*tch," which was interpreted by Det. Vasquez to be slang for an untraceable firearm. She then stated, "if you go

f**k with Dude or whatever - whatever man, you could do your own thing or whatever. You could take everything from there, ya heard me?" to which her brother responded, "[s]h*t gonna be lovely when you come home, son."

The next day on June 9, 2011, McClure spoke to Defendant. When Defendant asked McClure whether "Dude" was going to testify, McClure responded "[n]ine out of ten, he ain't going to f*ck with that." He further informed Defendant that Griffin told him that they did not know where "Dude" was and "that's going to work out in my favor."

One month later, on July 8, 2011, McClure spoke to his mother who told him that the discovery packet provided by the State identified Smith as a witness. McClure's mother told him that his next court date was set for August 18, 2011. Three days before Smith's murder, on August 14, 2011, McClure told his friend Stevenson that he received his "paperwork" and that "Dude" was the only person who said something and he was the only reason he was being held. Stevenson then talked to McClure about having spoken to Griffin.

Six hours after Smith was murdered on August 17, 2011, McClure called Defendant and asked him whether he had heard the news about Smith and inquired as to whether it was true. Defendant answered, "[y]eah," to which McClure responded "[w]ell, that's good." Defendant then told McClure that their mother did not want him talking to McClure because the call could be traced "[s]ince that sh*t happen[ed]." McClure responded, "[f]**k it I ain't going to call at all . . . F**k everybody, I ain't worried about it. I'll be home soon." [. . .]

(footnotes omitted) <u>State v. Nelson</u>, 169 So.3d 493, 495-99 (La. App. 5th Cir. 2015); State Record Volume 7 of 12, Louisiana Fifth Circuit Court of Appeal Opinion, 14-KA-252, pages 3-10, March 11, 2015.

On August 14, 2013, following an eight-day jury trial, Nelson, Griffin and McClure were found guilty as charged on counts one, two, three, five, six, seven and eight, and as to count four, McClure was found guilty of the lesser offense of attempted possession of a weapon by a felon.[5] On September 9, 2013, the state trial court denied

---

[5]St. Rec. Vol. 1 of 12, Jury Verdict, 8/14/13; Trial Minutes, 8/5/13; Trial Minutes, 8/6/13; Trial Minutes, 8/7/13; Trial Minutes, 8/8/13; Trial Minutes, 8/9/13; Trial Minutes, 8/12/13; Trial Minutes, 8/13/13; Trial Minutes, 8/14/13; St. Rec. Vol. 3 of 12, Trial Transcript, 8/5/13; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/5/13; Trial Transcript, 8/7/13; Trial Transcript, 8/8/13; St. Rec. Vol. 5 of 12, Trial Transcript (continued), 8/8/13; Trial Transcript, 8/9/13; St. Rec. Vol. 6 of 12, Trial Transcript

Nelson's motion for post-verdict judgment of acquittal or new trial challenging the sufficiency of the identification evidence.[6]  After waiver of legal delays, the state trial court sentenced Nelson concurrently to life in prison without benefit of parole, probation or suspension of sentence for second degree murder; 20 years in prison without benefit of parole, probation or suspension of sentence for the felon in possession conviction; and 30 years in prison for the conspiracy count.[7]

On direct appeal, Nelson's appointed counsel asserted four errors:[8] (1) The state trial court erred when it allowed the detective to testify regarding the jailhouse telephone conversations without qualifying him as an expert or questioning his methods under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (2) The state trial court erred in denying the motion for judgment of acquittal or for new trial based on insufficient evidence to support Nelson's identification and conviction. (3) The state trial court erred in denying defense challenges for cause to numerous jurors. (4) The state trial

---

(continued), 8/9/13; Trial Transcript, 8/12/13; St. Rec. Vol. 7 of 12, Trial Transcript (continued), 8/12/13; Trial Transcript, 8/13/13; Trial Transcript, 8/14/13; St. Rec. Vol. 8 of 12, Trial Transcript, 8/6/13.

[6]St. Rec. Vol. 1 of 12, Sentencing Minutes, 9/9/13; Motion for Judgment of Acquittal-Motion for New Trial, 9/3/13.

[7]St. Rec. Vol. 1 of 12, Sentencing Minutes, 9/9/13; St. Rec. Vol. 7 of 12, Sentencing Transcript, 9/9/13.

[8]St. Rec. Vol. 7 of 12, Appeal Brief, 2014-KA-0252, 7/28/14.

court erred in denying a defense to the conspiracy count.  Nelson was granted leave to file a pro se supplemental brief, but no brief was filed.[9]

On March 11, 2015, the Louisiana Fifth Circuit affirmed Nelson's convictions and sentences, finding no merit in claims one, two and four.[10]  The court also held that Nelson's third claim was barred from review on appeal, because he did not exhaust his peremptory exceptions during voir dire.

The Louisiana Supreme Court denied Nelson's related writ application on February 26, 2016, without stated reasons.[11]  His conviction and sentences became final ninety (90) days later, on May 26, 2016, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

Almost one year later, on May 25, 2017, Nelson through retained counsel filed in the state trial court an application for post-conviction relief asserting ineffective

---

[9]St. Rec. Vol. 7 of 12, Motion for Leave, 9/25/14; 5th Cir. Order, 9/25/14.

[10]Nelson, 169 So.3d at 493; St. Rec. Vol. 7 of 12, 5th Cir. Opinion, 14-KA-252, 3/11/15.  The Court also ordered the state trial court to correct its uniform commitment order to be consistent with the sentencing transcript.  The state trial court complied on March 19, 2015.  St. Rec. Vol. 1 of 12, Minute Entry, 3/19/15.

[11]State v. Nelson, 187 So.3d 468 (La. 2016); St. Rec. Vol. 10 of 12, La. S. Ct. Order, 2015-KO-0685, 2/26/16; La. S. Ct. Writ Application, 15-KO-685, 4/8/15; St. Rec. Vol. 7 of 12, La. S. Ct. Letter, 2015-KO-0685, 4/8/15.

assistance of trial and appellate counsel.[12]  On November 17, 2017, after considering the State's response, the state trial court denied relief, finding no merit in Nelson's claims.[13] On December 7, 2017, the state trial court declined to consider Nelson's untimely traverse, noting that it had already denied the application and did not alter the court's prior decision.[14]

On January 29, 2018, the Louisiana Fifth Circuit denied Nelson's counsel-filed writ application seeking review of that ruling.[15]  On October 15, 2018, the Louisiana Supreme Court denied the related writ application also filed by Nelson's counsel.[16]

---

[12]St. Rec. Vol. 1 of 12, Application for Post-Conviction Relief, 5/25/17 (mailed by counsel 5/22/17).

[13]St. Rec. Vol. 2 of 12, Trial Court Order, 11/17/17; see also, State's Response, 11/14/17.

[14]St. Rec. Vol. Trial Court Order, 12/7/17; Traverse, 12/5/17.

[15]St. Rec. Vol. 2 of 12, 5th Cir. Order, 18-KH-32, 1/29/18; St. Rec. Vol. 11 of 12, 5th Cir. Writ Application, 18-KH-32, 1/19/18 (post-marked and dated 1/16/19).  The state trial court set the return date for January 16, 2017, which was the date the pleading was mailed to the Louisiana Fifth Circuit by Nelson's counsel.  St. Rec. Vol. 2 of 12, Trial Court Order, 12/19/17.

[16]Nelson v. State, 254 So.3d 681 (La. 2018); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2018-KP-0349, 10/15/18; La. S. Ct. Writ Application, 18-KP-349, 3/1/18 (post-marked by counsel 2/28/18); St. Rec. Vol. 2 of 12, La. S. Ct. Letter, 2018-KP-349, 3/1/18.

III.    <u>FEDERAL HABEAS PETITION</u>

On November 16, 2018, the clerk of this court filed Nelson's federal habeas corpus petition in which he asserted the following claims:[17] (1) The state trial court erred when it allowed a detective to give opinions identifying voices on the jailhouse calls and defining and interpreting slang words without qualifying him as an expert or questioning his methods under <u>Daubert</u>. (2) The state trial court erred by denying Nelson's motion for judgment of acquittal or for new trial based on insufficient evidence to support Nelson's identification and conviction. (3) The state trial court unconstitutionally erred in denying the defense's challenges for cause for numerous jurors. (4) The state trial court unconstitutionally erred in preventing Nelson from presenting a defense. (5) Trial counsel was ineffective for failing to object to hearsay testimony. (6) Trial counsel was ineffective for failing to call defense witnesses. (7) Appellate counsel was ineffective for failing to raise viable claims on appeal.

---

[17]Rec. Doc. No. 1-1, p. 7-8 (claims 16 through 22).  As noted above, Nelson's original submission included claims related to his co-defendant, McClure.  Of the claims listed in Record Doc. No. 1-1 at pages 6 through 8, I have concluded based on my research that claim numbers 1 through 15 were claims pursued by McClure in the state courts and are <u>not</u> claims asserted in any state court by Nelson (and thus would be unexhausted as to Nelson).  <u>See</u> <u>State v. McClure</u>, 169 So.3d 510 (La. App. 5th Cir. 2015), <u>writ denied</u>, 187 So.3d 468 (La. 2016); <u>McClure v. State</u>, 254 So.3d 682 (La. 2018).  I therefore have excluded these claims specifically invoking challenges to McClure's convictions and have renumbered the remaining claims relevant to Nelson for ease of reference.  I also note that, even if all of the claims are pursued by Nelson in this federal petition, their inclusion would not alter my recommendation for dismissal of this case as time-barred.

The State filed a response in opposition to Nelson's federal petition asserting that petition was not timely filed.[18]  Nelson then filed an "objection" to the State's response.[19] Nelson argues that his counsel caused the delay and this should excuse his untimely filing of the petition.[20]

## IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to this petition deemed filed on November 14, 2018.[22]

---

[18]Rec. Doc. No. 15.

[19]Rec. Doc. No. 16.

[20]Rec. Doc. No. 16, pp. 3-6.  As noted previously, the State's response also argued that the joint petition filed by Nelson and McClure was not proper or authorized by law.  Rec. Doc. No. 15, pp. 4-5. In his "objection," Nelson asserts that the joint petition was filed because the co-defendants had pursued state court post-conviction relief together and further argues that, if this court does not exercise jurisdiction over the joint petition, the court should bifurcate the claims.  Rec. Doc. No. 16, pp. 1-2.  As already noted, the clerk of this court already effectively bifurcated the petitions prior to allotment.

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State correctly asserts that Nelson's federal petition was not timely filed.  For the following reasons, Nelson's petition must be dismissed with prejudice because it is time-barred.

V.    STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date the conviction became final.[23]  Duncan v. Walker, 533 U.S. 167,

---

F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Nelson's petition on November 16, 2018, when it was received.  Nelson dated his signature on the form petition on November 14, 2018.  This is the earliest date appearing in the record on which Nelson could have presented his pleadings to prison officials for mailing to a federal court.  Payment of the filing fee does not alter the application of the federal mailbox rule.  Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

[23]The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the

179-80 (2001).  Nelson's conviction was final on May 26, 2016, when the Louisiana Supreme Court denied his writ application after direct appeal.  Applying Section 2244 literally, Nelson had one year from finality of his conviction, until May 26, 2017, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations in which the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

---

Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

13

Nelson has asserted no credible reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. Construed broadly, Nelson's initial pleadings appear to claim generally that, although his state post-conviction counsel timely filed for state post-conviction review, he did not do so early enough to leave time for Nelson to pursue federal habeas corpus relief.[24] Nelson's objection to the State's response blames his counsel's "unprofessional conduct" for any untimeliness and argues that his counsel's "ineffective assistance" in this regard constitutes extraordinary circumstance justifying equitable tolling.[25] However, federal courts have refused to allow equitable tolling when the alleged delay in filing is attributable to counsel. See United States v. Samak, No. 91cr189, 2000 WL 557331, at *1 (E.D. La. 2000) (petitioner's Section 2255 motion to vacate was untimely despite a claim that retained counsel missed the filing deadline imposed by the AEDPA). Because a prisoner does not have an absolute constitutional right to counsel when seeking post-conviction review or collateral relief, any alleged errors or delays by post-conviction counsel do not justify equitable tolling. See Cousin, 310 F.3d at 843; United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002). Thus, Nelson is not entitled to equitable tolling as a result of his counsel's delay, if any, in filing for

---

[24]Rec. Doc. No. 1-1, p. 5.

[25]Rec. Doc. No. 16, pp. 3-5.

14

state post-conviction review, with the result that his own later filing for federal habeas relief was untimely.

Furthermore, in an August 29, 2016, letter to Nelson and co-defendant McClure, their post-conviction counsel specifically advised that the "federal deadline will expire approximately May 26, 2017."[26] Nelson cannot now claim that he was misled by counsel or unaware of the deadline for seeking federal habeas corpus relief.

The record does not establish circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case.  See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was

---

[26]Rec. Doc. No. 1-1, p. 114.

deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-78.

The decisions of the Fifth Circuit and other federal courts have held that, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006). I have also afforded petitioner's counsel the benefit of the post-mark

dates for the post-conviction filings where Louisiana law and the Louisiana courts allowed.

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, the one-year AEDPA statute of limitations began to run on May 27, 2016, the day after Nelson's conviction was final under federal law. The period

continued to run uninterrupted for 364 days, until May 25, 2017, when Nelson's counsel filed Nelson's application for state post-conviction relief. The period remained tolled until October 15, 2018, when the Louisiana Supreme Court denied Nelson's related writ application. The one-year AEDPA limitations period began to run again the next day, October 16, 2018, and expired that same day. Nelson had <u>no</u> properly filed application for state post-conviction relief or other collateral review pending at the time or after that might have further tolled the AEDPA one-year statute of limitations.

Nelson's federal petition was filed under the mailbox rule on November 14, 2018, which was 29 days <u>after</u> the AEDPA one-year statute of limitations expired on October 15, 2018. Although Nelson's delay was not lengthy, "the magnitude of [a petitioner's] tardiness" is not a proper consideration in determining the timeliness of a federal habeas petition. <u>See</u> <u>Lookingbill v. Cockrell</u>, 293 F.3d 256, 264 (5th Cir. 2002) (missing the AEDPA deadline by even one day nevertheless renders a federal petition untimely); <u>accord</u> <u>In re Lewis</u>, 484 F.3d 793, 796 (5th Cir. 2007) (authorization to file a successive habeas application denied because it was filed one day too late). Nelson's case presents circumstances in which the Fifth Circuit "consistently ha[s] denied tolling." <u>Id.</u>, 293 F.3d at 265 (missing the deadline by only a few days is still untimely). Nelson's federal petition was <u>not</u> timely filed and must be dismissed with prejudice for that reason.[27]

---

[27]Nelson has asserted no other excuse to avoid the expiration of the AEDPA limitations period. He has not asserted his actual innocence or brought new, reliable evidence to meet the high burden set forth in <u>McQuiggin v. Perkins</u>, 569 U.S. 383 (2013). Furthermore, the holding in <u>Martinez v. Ryan</u>, 566

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Jeffery D. Nelson's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

---

U.S. 1 (2012), is not relevant to this timeliness discussion.  In Martinez, the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, 569 U.S. 413, 429 (2013) (quoting Martinez, 566 U.S. at 13).  Here, the state courts did not bar review of Nelson's ineffective assistance of counsel claims, which were denied under Strickland.  This dismissal is based not on a state procedural bar but on Nelson's failure timely to file his federal habeas petition.  The Martinez and Trevino decisions do not address or excuse the untimely filing of a federal habeas petition.  See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation).  Martinez and Trevino also are not new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA.  See In re Paredes, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) (". . . the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Neither Martinez nor Trevino provide equitable or statutory relief from Nelson's untimely filing.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[28]

New Orleans, Louisiana, this _____15th_____ day of July, 2019.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[28]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.